```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

_____
**REUVEN GILMORE, et al.**,     )
                                )
        Plaintiffs,              )
                                )
    v.                           )    Civil Action No. 01-853 (GK)
                                )
**THE PALESTINIAN INTERIM SELF-** )
**GOVERNMENT AUTHORITY, et al.**, )
                                )
        Defendants.              )
_____)

## MEMORANDUM OPINION

Plaintiffs are various family members of Esh Kodesh Gilmore, who Plaintiffs allege was killed in a terrorist shooting on October 30, 2000 in Jerusalem, Israel. Defendants are the Palestinian Interim Self-Government Authority ("PA"), the Palestine Liberation Organization ("PLO"), Yasser Arafat, and several other individual Defendants Plaintiffs allege were responsible for planning and carrying out the shooting. Plaintiffs bring suit under the Anti-Terrorism Act of 1991 ("ATA"), 18 U.S.C. § 2331, et seq., for international terrorism, and related torts. This matter is before the Court on Defendants' Revised Motion to Dismiss, [**#21**]. Upon consideration of the Motion, Opposition, Reply, Surreply, and the entire record herein, Defendants' Motion is **granted in part and denied in part**.

### I.   Background

Plaintiffs base their lawsuit on the Antiterrorism Act of 1991, which provides a cause of action for United States nationals

injured by an act of international terrorism. 18 U.S.C. § 2333(a). Plaintiffs also allege wrongful death, negligence, and intentional and negligent infliction of emotional distress.

For purposes of this Motion, the facts can be briefly stated. Plaintiffs allege that Defendants are responsible for "the planning and execution of terrorist bombings and shootings against civilians worldwide." Compl. ¶ 19. They further allege that on October 30, 2000, several of the individual Defendants, who were associated with the PLO and the PA, "arrived at the offices of the National Insurance Institute on Asfani Street in Jerusalem, entered the building and without warning or provocation murdered," their family member, Esh Kodesh Gilmore, a United States citizen, by gunfire. Id. ¶ 29. At the time of his death, Gilmore was 25 years old, married, and father of a one-year old girl. Id. ¶ 31.

Defendants have moved to dismiss, claiming Plaintiffs' Complaint presents a non-justiciable political question, lack of subject matter jurisdiction based on Defendants' sovereign status, failure to state a claim upon which relief can be granted, and lack of personal jurisdiction over the individually named Defendants.

**II. Standard of Review**

A motion to dismiss should be granted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A motion to dismiss tests not

whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim in the Complaint. See Fed. R. Civ. P. 12(b)(6). Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).

To prevail on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction to hear the case. Jones v. Exec. Office of the President, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). In making its determination, the court may consider matters outside the pleadings. Lipsman v. Sec. of the Army, 257 F. Supp. 2d 3, 6 (D.D.C. 2003).

To avoid dismissal of an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "a plaintiff must make a prima facie showing of pertinent jurisdictional facts." United States v. Philip Morris, Inc., 116 F. Supp. 2d 116, 121 (D.D.C. 2000) (citing Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C. Cir. 1983)). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum . . . ." Id. at 121 (citing Naartex, 722 F.2d at 787). In making its decision, the

Court must resolve "factual discrepancies" in the record "in favor of the plaintiff." Crane v. New York Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990) (citing Reuber v. United States, 750 F.2d 1039, 1052 (D.C. Cir. 1984)).

**III. Analysis**

    **A.   Plaintiffs' Complaint Presents Justiciable Issues Rather than Political Questions**

Defendants first argue that Plaintiffs' Complaint should be dismissed because their allegations "have nothing to do with the death of the decedent," but rather, "amount to an all-out political attack upon the PA, the PLO, President Arafat[1], and senior Palestinian officials over decades and of such wide scope as to be nonjusticiable, raising issues that are not appropriate for or capable of judicial resolution." Defs.' Mot. at 6. Defendants assert that "the judicial process is not equipped to assess the actions of a distant and foreign functioning government and its officials in this way over a period of decades . . . ." Id. at 6-7.

Defendants fail to address the fact that this lawsuit was brought under a statute specifically designed to provide a civil cause of action in federal court for terrorist acts taken against American nationals abroad. The ATA provides:

---

[1] The Court can take judicial notice of the fact that Yasser Arafat died in 2004.

4

> Action and jurisdiction. -- Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).

Enactment of the ATA makes it clear that both Congress and the Executive have "expressly endorsed the concept of suing terrorist organizations in federal court," and therefore this Court need not delve into an in-depth political question analysis here. Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44, 49 (2d Cir. 1991). Moreover, through the express language of the ATA and the application of common law tort principles, the Court has clear and manageable standards by which to properly adjudicate Plaintiffs' claims. See Ungar v. The Palestinian Authority, 402 F.3d 274, 281 (1st Cir. 2005).

The courts which have addressed this precise issue have squarely held that ATA claims brought against the PLO and the PA do not constitute non-justiciable political questions. See, e.g., Biton v. Palestinian Interim Self-Government Authority, 310 F. Supp. 2d 172, 184-85 (D.D.C. 2004); Ungar, 402 F.3d at 282; Klinghoffer, 937 F.2d at 49-50; Knox v. Palestine Liberation Organization, 306 F. Supp. 2d 424, 448-49 (S.D.N.Y. 2004).

Defendants fail to discuss, no less distinguish, any of these cases.

Defendants argue that "the high level of violence and antipathy over the months since September 2000 have created a situation akin to the conflict which supported the ruling of non justiciability in Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992)". Defs.' Mot. at 7. In that case, the Eleventh Circuit affirmed the district court's dismissal of the defendant organizations based on the political question doctrine, mainly because of the lack of judicially manageable criteria for adjudication of the claims. The court noted that to decide the issues before it, the district court would have had "to measure and carefully assess the use of the tools of violence and warfare in the midst of a foreign civil war," and to "inquire into the relationship between United States policy and the actions of the contra[s]." Linder, 963 F.2d at 335 (internal citations to district court opinion omitted). Defendants' reliance on Linder is unfounded because, as noted above, the ATA provides clear judicially discoverable and manageable standards for adjudication of this case. Biton, 310 F. Supp. 2d at 184.

Whatever the merits of Defendants' contentions about the political situation between the Israelis and the Palestinians, it does not necessarily follow that Plaintiffs' claims constitute a non-justiciable political question. As the Second Circuit noted in

Klinghoffer, in which the PLO made nearly the exact same non-justiciability argument, the doctrine "is one of 'political questions,' not one of 'political cases.' The fact that the issues before us arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question." 937 F.2d at 49 (citing Baker v. Carr, 369 U.S. 186, 217 (1962)). As in Klinghoffer, this case "is essentially an ordinary tort suit," despite its tragic facts. Consequently, Defendants' Motion with respect to non-justiciability must be denied.

### B. Palestine Is Not a State and Therefore Is Not Entitled to Sovereign Immunity

Defendants next argue that "Palestine is an entity that meets the definition of a state under U.S. and international law," and therefore is immune from suit under 18 U.S.C. Section 2337(2). Defs.' Mot. at 14. That section of the ATA provides that "[n]o action shall be maintained," against "a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority." 18 U.S.C. § 2337(2).

To determine whether a defendant is immune from suit because it is a "state," within the meaning of United States and international law, courts have looked to Section 201 of the Restatement (3rd) of Foreign Relations Law of the United States, which provides:

> Under international law, a state is an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with other such entities.

Defendants have the burden of establishing a prima facie case of sovereign immunity. See Price v. Socialist People's Libyan Arab Jamahiriya, 389 F.3d 192, 197 (D.C. Cir. 2004).

With respect to the required elements under the Restatement, Defendants make a blanket assertion that "[t]he State of Palestine has a defined territory in the West Bank, Gaza Strip and East Jerusalem, a permanent population numbering in the millions under the control of its own government and engages in and has the capacity to engage in foreign relations with other states." Defs.' Mot. at 15. At the very least, Defendants fail to establish that Palestine has the capacity to engage in formal relations with other sovereign states. As Plaintiffs note, the two agreements between the State of Israel and the PLO – the Declaration of Principles on Interim Self-Government Arrangements ("DOP") and the Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip ("Interim Agreement") – clearly indicate that the PA lacks the capacity to conduct foreign relations. Article 3(b) of Annex II of the DOP plainly states that foreign relations are outside the PA's powers and responsibilities. See Pls.' Ex. 1 at 7-14. Likewise, Article IX(5) of the Interim Agreement expressly provides, "[i]n accordance with the DOP, the Council will not have powers and

8

responsibilities in the sphere of foreign relations . . . ." See Pls.' Ex. 2 at 7.

Several courts have considered this precise issue in depth, and have concluded that Defendants lack the capacity to engage in foreign relations. For example, the court in Knox, relying on the express language of the Interim Agreement, held that the PLO and the PA do not have "sufficient capacity to conduct international relations to satisfy that criterion of statehood." Knox, 306 F. Supp. 2d at 438; Ungar, 402 F.3d at 291 (noting that the Interim Agreement "expressly denied the PA the right to conduct foreign relations"); see also Biton, 310 F. Supp. 2d at 181 (rejecting the defendants' arguments, almost identical to those made in this case, that Palestine is a state entitled to sovereign immunity and noting that "[t]he long-running conflict between the Israelis and the Palestinians has its very origins in the question of statehood between them"); Klinghoffer, 937 F.2d at 47 ("It is quite clear that the PLO meets none," of the requirements for statehood under the Restatement.).

In light of Defendants' failure to satisfy one of the criteria for statehood, it is not necessary for the Court to examine Plaintiffs' remaining arguments for why Palestine does not possess the attributes of statehood as outlined in the Restatement. See Pls.' Opp'n at 19-23.

Moreover, Defendants offer no documentation or other evidence to support their assertion that Palestine is a state within the Restatement's definition.[2] To the contrary, Defendants admit that "the PA and PLO have not fully exercised some of the ordinary and customary prerogatives of a state at all times in the expectation that a recognized, viable Palestinian state would result from the peace process in due course." Defs.' Mot. at 17. Thus, Defendants fail to meet their evidentiary burden to establish sovereign immunity.

Accordingly, Defendants' Motion to Dismiss based on sovereign immunity must be denied.[3] Ungar, 402 F.3d at 292.

### C. Plaintiff's Complaint Sufficiently States a Claim for International Terrorism under the ATA

Defendants next assert that Plaintiffs fail to state a claim under the ATA. They argue that "Palestinian resistance and self

---

[2] To be clear, Defendants did attach to their Reply a U.S. Department of State press statement from 2003 entitled "A Performance-Based Roadmap to a Permanent Two-State Solution to the Israeli-Palestinian Conflict." See Defs.' Reply at 3-5. The "Roadmap," however, was written on the premise that a "state" of Palestine does not exist. Defendants have done nothing to show that since issuance of the "Roadmap," the Restatement's requirements for statehood have been met.

[3] Defendants also mention that Plaintiffs' claims "may well be barred" under the exception in Section 2331(1) of the ATA for "acts of war," but do not fully present their argument at this time. They note that "the facts cannot be determined on this motion," but suggest that at a later stage in the litigation, "the shooting may well be shown to have been an act of war for purposes of sec. 2336." Therefore, the Court need not address this argument at this time.

10

defense in the occupied territories against Israeli occupation and oppression are neither coercion nor intimidation [and] . . . do not constitute terrorism." Defs.' Mot. at 20.

The plain words of Plaintiffs' Complaint make it clear that Defendants' argument has no merit. Plaintiffs allege that the murder of Esh Kodesh Gilmore was "planned and carried out" by several of the individual Defendants, "pursuant to prior authorization, instructions and directives of Defendants PA, PLO and ARAFAT." Compl. ¶ 30. Plaintiffs also allege that Defendants' actions were "intended to intimidate or coerce a civilian population, and to influence the policy of a government by intimidation or coercion, within the meaning of 18 U.S.C. §2331." Id. ¶ 39. These allegations, which must be taken as true at this early stage of the litigation, are more than sufficient to state a claim for international terrorism under the ATA.

Defendants' argument that Plaintiffs have failed to show that Defendants' motivation was intentional, in accordance with the definition of international terrorism in Section 2331 of the ATA, also must fail. "International terrorism" is defined in the ATA as:

> activities that --
>
> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

>    (B) appear to be intended--
>
>    (i) to intimidate or coerce a civilian population;
>
>    (ii) to influence the policy of a government by intimidation or coercion; or
>
>    (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
>    (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. 2331(A)-(C).

It is well-settled that the issue of intent is one for the jury to decide, and not an appropriate basis for ruling on a motion to dismiss. McCormick v. United States, 500 U.S. 257, 270 (1991); see Biton, 310 F. Supp. 2d at 181-83. Accordingly, Defendants' Motion to Dismiss based on failure to state a claim must be denied.

    **D.    The Court Lacks Personal Jurisdiction over the Individual Defendants[4]**

Finally, Defendants claim that none of the named individual Defendants[5] have any connection to the United States, and therefore the Court may not exercise personal jurisdiction over them.

---

[4] Defendants did not move to dismiss the PLO and the PA from this action for lack of personal jurisdiction. Therefore, the case will proceed with those two entities as the sole Defendants.

[5] The individually named Defendants are: Yasser Arafat (now deceased), Faisal Abu Sharah, Mahmoud Damara, Bashar Al-Hatib, Muhand Abu Haliwa, Khaled Suish, Marwan Barghouti, Mustafa Mahmud Misalmani, Mahmoud Matar, Ziad Wahadan, Yusef Matir, and John Does 1-99.

Plaintiffs argue that the Court has personal jurisdiction over the individual Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), which provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Plaintiffs contend that, "the exercise of jurisdiction is consistent with the Constitution and laws of the United States," under a specific personal jurisdiction analysis outlined in a line of cases arising under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an amendment to the Foreign Sovereign Immunities Act, which provides an exception to a foreign state's sovereign immunity in certain limited circumstances. See, e.g., Eisenfeld v. Islamic Republic of Iran, 172 F. Supp. 2d 1 (D.D.C. 2000); Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38 (D.D.C. 2000); Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 (D.D.C. 1998); Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998), aff'd Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748 (2d Cir. 1998).

In those cases, the courts held that the act of committing a terrorist act against a United States national abroad, even if the defendant did not have actual contacts with the United States,

13

constituted sufficient minimum contacts to satisfy due process for personal jurisdiction purposes.  In Eisenfeld, for example, the court held that "a foreign state that causes the death of a United States national through an act of state-sponsored terrorism has the requisite 'minimum contacts' with the United States so as not to offend 'traditional notions of fair play and substantial justice.'" 172 F. Supp. 2d at 7.

Plaintiffs' argument that the personal jurisdiction analysis used in the AEDPA cases should be applied to the facts of this case must be rejected.  The ATA and the AEDPA differ in significant respects.

First, in rejecting the same arguments that Plaintiffs make here, Judge Collyer noted in Biton:

> [t]here is one very simple reason why a district court may exercise personal jurisdiction over a foreign state defendant under the FSIA but not a similarly-situated individual defendant under the ATA.  Section 1330(b) of the FSIA provides that 'personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under section 1608 of this title' . . . The ATA, in contrast, does not contain such an explicit grant of personal jurisdiction.

310 F. Supp. 2d at 179 (internal citations omitted).

Second, unlike the present case, the AEDPA cases Plaintiffs cite were brought against states and state officials.  As the D.C. Circuit held in Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir. 2002), "foreign states are not 'persons'

protected by the Fifth Amendment." Id. at 96. Therefore, the courts addressing the AEDPA claims did not have to consider the individual interests and freedoms protected by the due process analysis for personal jurisdiction which are presented in this case.

As our Court of Appeals explained in Price:

> [U]nlike private entities, foreign nations are the juridical equals of the government that seeks to assert jurisdiction over them . . . If they believe that they have suffered harm by virtue of being haled into court in the United States, foreign states have available to them a panoply of mechanisms in the international arena through which to seek vindication or redress.

Id. at 98 (internal citations omitted). The individually named Defendants in this action do not have such mechanisms, and therefore this Court's assertion of jurisdiction over them must comport with due process under the Constitution.

For these reasons, the Court finds the analysis of the only two courts that have addressed the issue of personal jurisdiction over individual defendants sued under the ATA to be persuasive. See Biton, 310 F. Supp. 2d 172; Ungar v. Palestinian Authority, 153 F. Supp. 2d 76, 93-95 (D.R.I. 2001).

Therefore, Plaintiffs must satisfy the Court that it has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Under that Rule, the Court can find personal jurisdiction if the following requirements are met: (1) the plaintiff's claim arises under federal law; (2) the putative defendant is beyond the

jurisdictional reach of any state court of general jurisdiction; and (3) the federal courts' exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law.  United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 38 (1st Cir. 1999); In re Vitamins Litigation, 94 F. Supp. 2d 26, 34-35 (D.D.C. 2000).

With respect to the third requirement, a court must assure itself that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  "While the courts and legislatures have developed numerous approaches to ascertaining whether a defendant meets the 'minimum contacts' test, the single most important consideration is whether a defendant's 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"  Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F. Supp. 2d 54, 59 (D.D.C. 2003) (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

While Plaintiffs can easily satisfy the first two prongs of the test for personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), see Pls.' Opp'n at 38-39, they do not provide any evidence whatsoever to show that haling the individually named Defendants into this Court would "not offend the Constitution."

16

Plaintiffs do not even allege that the individual Defendants had any contact with the United States.  Without such a proffer, the Court is not satisfied that the individually named Defendants' "conduct and connection with the forum State are such that [they] should reasonably anticipate being haled into court there."  Pugh, 290 F. Supp. 2d at 59.  Therefore, Defendants' Motion to Dismiss the individual Defendants for lack of personal jurisdiction must be granted.

**IV. Conclusion**

Accordingly, for the foregoing reasons, Defendants' Motion to Dismiss is **granted in part and denied in part.**  Plaintiffs' claims against the individually named Defendants are **dismissed.**  Defendants' Motion is **denied** with respect to subject matter jurisdiction, failure to state a claim, and justiciability.  An Order will accompany this Memorandum Opinion.[6]

March 7, 2006                         _____/s/_____

                                      Gladys Kessler
                                      United States District Judge

**Copies To:** Attorneys of record via ECF

---

[6] The Court is well aware that the Revised Motion to Dismiss has been pending for an extraordinarily long time, and regrets the delay in issuance of this Opinion.  Other matters on this Court's calendar made an earlier ruling impossible.

17