IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REUVEN GILMORE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:01cv853 (GK) |
| | ) | |
| PALESTINIAN INTERIM SELF- | ) | |
| GOVERNMENT AUTHORITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | Next Event: September 1, 2010 Exchange |
| | ) | Witness Lists |
| | ) | |
| | ) | |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S DECISION
TO ISSUE LETTERS OF REQUEST FOR JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OR, IN THE ALTERNATIVE, TO ISSUE
MODIFIED LETTERS AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF**

On August 3, 2010, Plaintiffs petitioned the Court to issue a Letter of Request for Judicial

Assistance to the Director of Courts in Israel pursuant to the Hague Convention of 18 March

1970 on the Taking of Evidence Abroad (the "Hague Evidence Convention"). *See* Dkt. No. 184.

Plaintiffs' Hague Request seeks the assistance of the State of Israel in compelling the following

three individuals to appear for depositions: (1) Mahmoud Damara; (2) Mustafa Misalmani; and

(3) an officer or employee of the National Insurance Institute knowledgeable about any killings

at the National Insurance Institute between January 1, 1986 and January 18, 2001. *See* Dkt. No.

184-1 at 2.

Defendants the Palestinian Authority ("PA") and Palestine Liberation Organization

("PLO") treated Plaintiffs' petition as they would any other motion before this Court. *See* Dkt.

No. 181 at ¶ 4 (instructing parties that "when necessary and appropriate," they are to file

"[m]otions."). A timely response to a motion would have been due today, August 20, 2010.

1085673.1

While Defendants had no objection as to the Request to cause an officer or employee of the National Insurance Institute to appear for a deposition, they wished to object to the issuance of the Letter of Request as to Misalmani and to the form of the Letter of Request as to Damara. Defendants thus began drafting an appropriate opposition that they intended to file yesterday, August 19, 2010. On August 5, 2010, however, the court issued the Letter of Request sought by Plaintiffs, and Defendants were unaware of the Court's action, possibly due to a clerical error. On August 19, 2010, before Defendants could file their objections, Plaintiffs' counsel sent an e-mail to Defendants' counsel noting that the Court's prior action had not been docketed and informing Defendants that the Letter of Request had issued. The issued Letter of Request was attached to the e-mail. *See* Exh. 1 (August 19, 2010 e-mail from D. Strachman to L. Ferguson).

While the Court may have issued the Letter of Request based on Plaintiffs' argument that parties generally lack standing to oppose discovery requests propounded on non-parties, Defendants respectfully assert that parties can always object to duplicative and unduly burdensome discovery. *See* Fed. R. Civ. P. 26(b)(2)(C); 26(c). Accordingly, for the reasons stated below, the PA and PLO ask this Court to reconsider its decision to issue the Letter of Request as to Misalmani and reconsider its decision to issue the Letter of Request as to Damara in its current form.

## Argument

### A.    Defendants Have Standing to Oppose Duplicative and Unduly Burdensome Discovery

Plaintiffs argued that Defendants could not respond to their Hague Request because Defendants lack standing to oppose discovery requests propounded to third parties. *See* Dkt. No. 184 at 1. Although Defendants may not have standing to move to quash a subpoena directed at a third party, they have standing to object to any duplicative and unduly burdensome discovery

pursuant to Federal Rules of Civil Procedure 26(b)(2)(C) and 26(c). *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005). *Cf. Madanes v. Madanes*, 199 F.R.D. 135, 140-41 (S.D.N.Y. 2001) (allowing defendants to object, on confidentiality and convenience grounds, to the issuance of Letters of Request under the Hague Convention seeking deposition testimony from non-parties). Indeed, given that the targets of the discovery – two overseas prisoners – apparently were not served with the Petition and thus have no basis or ability upon which to be heard, it makes good sense for the Court to hear from Defendants. Here, as to Misalmani, Defendants object to the Letter of Request as issued because it fails to inform the Israeli courts that Plaintiffs seek to re-depose him and because Plaintiffs have failed to show that the burden of a second deposition of Misalmani is likely to be outweighed by its benefit. As to Damara, the Letter of Request contains insufficient information as to the subject matter of the deposition and will not prevent Defendants from incurring unnecessary burden and expense preparing for a deposition that cannot proceed due to possible assertion of privileges against self-incrimination. In particular, Plaintiffs Letter of Request failed to mention that Damara has pending charges in Israel, is represented by counsel in that matter, or that the matter is potentially related to the areas of likely inquiry.

**B.     Plaintiffs Have Not Shown Any Entitlement to Conduct a Second Deposition of Misalmani.**

As Plaintiffs acknowledge, they already have deposed Mustafa Misalmani pursuant to a Letter of Request issued by this Court. Dkt. 184 at 2; *see also* Dkt. No. 15 (October 17, 2001 Hague Request). During the December 30, 2001 deposition, Misalmani denied any knowledge of the Gilmore shooting or of individuals Plaintiffs claim were involved in the shooting. *See* Exh. 2 (certified translation of Misalmani deposition) at 3:1-6; 5:3-5; 5:16-23; 11:29-30; 12:25-31; 14:28-29.

1085673.1

While Plaintiffs acknowledge Misalmani's prior testimony in their Petition, the issued Letter of Request, in its current form, omits the fact that the Plaintiffs previously deposed Misalmani in this matter, a fact that may well be of interest to the State of Israel in determining whether to provide the requested judicial assistance. For this reason alone (*i.e.*, the letter's omission of material information), the Court should rescind its request for judicial assistance, or in the alternative, issue an amended Letter of Request indicating that this is the second time Plaintiffs have sought the assistance of the Israeli courts in deposing Misalmani.

Plaintiffs also have identified no provision in the Hague Evidence Convention authorizing or contemplating conducting more than one deposition of the same individual, nor have Plaintiffs identified any U.S. case law endorsing the use of the Hague Evidence Convention for re-deposing foreign witnesses. Indeed, Defendants have found no precedent for using the Hague Evidence Convention to compel a foreign witness to appear for a second deposition.

If Misalmani was a U.S. witness within the subpoena power of the Court, the Plaintiffs still would not be entitled to the relief they seek as the Federal Rules of Civil Procedure do not allow, without leave of court, a party to conduct a deposition if the deponent already has been deposed in the case. Fed. R. Civ. P. 30(a)(2)(A)(ii). When leave is properly sought, the Court must consider whether (1) the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had an ample opportunity to obtain the information by discovery; and (3) the burden or expense of the discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. *See* Fed. R. Civ. P. 30(a)(2); Fed. R. Civ. P. 26(b)(2)(C)(ii). Plaintiffs did not make

1085673.1

such a showing to this Court and the issued Letter of Request does not put Israel on notice of any basis to make such an assessment.

Had Plaintiffs sought to make such a showing they would have failed.  Plaintiffs already had an opportunity to depose Misalmani and offer no basis other than sheer speculation for believing that a second deposition will be anything but duplicative of the first.   Thus, the likely benefit of the second deposition does not outweigh the burden and expense to Defendants of participating in a deposition in Israel.  *See, e.g., Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.*, No. 07-cv-15324, 2010 U.S. Dist. LEXIS 42826, at *15 ( E.D. Mich. Apr. 30, 2010) (denying request to re-depose witness where need was speculative and party had not shown good cause to re-open the deposition); *Crigler v. Richardson*, No. 3:08-0681, 2010 U.S. Dist. LEXIS 55782, at *14 (M.D. Tenn. June 3, 2010) (denying leave to conduct second deposition where any benefit from a second deposition of the deponent would not be worth the burden or expense of the proposed discovery).

Plaintiffs' stated rationale for seeking a second deposition of Misalmani – that Misalmani supposedly admitted during a subsequent criminal trial to having made a statement he denied making in the earlier deposition – is not supported by any factual showing.  Plaintiffs' petition asserts only: "during the course of his subsequent trial (for other terrorist attacks) Misalmani freely agreed to the admission of his January 18, 2001 statement into evidence." Dkt. No. 184 at 2. Neither the Court nor the Defendants should be required to accept on faith that Plaintiffs have accurately described Misalmani's position or testimony, if any, regarding the January 18, 2001 statement at his criminal trial.

It is unclear what Plaintiffs even mean when they say Misalmani "freely agreed to the admission of his January 18, 2001 statement into evidence." *See id.*  The reference appears

1085673.1

intentionally vague and notably does not indicate whether Misalmani vouched for or in any way confirmed the accuracy of his January 18, 2001 statement.  Moreover, Plaintiffs acknowledge that Misalmani's trial was "for other terrorist attacks," *see, id., i.e.*, not the Gilmore attack.  It thus is not apparent why Misalmani's January 18, 2001 statement to the Israeli police allegedly relaying a statement from "Abu Halawa" that he had carried out the Gilmore shooting would even have been relevant to Misalmani's criminal trial.  In short, Plaintiffs' hope that "Misalmani may now be willing to confirm the accuracy of his January 18, 2001 statement at a new deposition" is unsubstantiated and does not provide a basis for using the Hague process to re-depose him. *See id.* at 3.

In any event, Misalmani's statement is of dubious evidentiary value in this case. *Cf.* Fed. R. Evid. 804(b)(3) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.").  Here, the fact that Misalmani implicated a third party while under questioning by the Israeli police as a terrorist suspect does not lend any indicia of reliability to the hearsay. *See United States v. Johnson*, 802 F.2d 1459, 1465 (D.C. Cir. 1986) ("It is common knowledge that an arrestee can curry favor with law enforcement authorities by implicating others in the offense.") (internal citations omitted).  Thus, in the unlikely event the discovery is not duplicative, the burden and expense outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C).

**C.**     **The Letter of Request as to Damara Contains Insufficient Information.**

With respect to Mahmoud Damara, the issued Letter of Request fails to specify the questions to be put to Damara or a statement of the subject-matter about which he is to be examined.  Article 3(f) of the Hague Evidence Convention states that such information shall be

1085673.1

included in the Letter of Request "where appropriate." Hague Evidence Convention, art. 3(f), 23

U.S.T. 2555 ("Where appropriate, the Letter shall specify, inter alia . . . the questions to be put to

the persons to be examined or a statement of the subject-matter about which they are to be

examined").

Here, this information is necessary given Plaintiffs' counsel's previous depositions

conducted pursuant to the Hague Evidence Convention in this matter, where the inquiries

focused not on the instant case but on other potential actions against the PA or PLO or other

defendants.  Plaintiffs previously deposed three individuals pursuant to the Court's October 17,

2001, Hague Request.  *See* Dkt. No. 15.  In addition to Misalmani, Plaintiffs also deposed former

defendants Mahmoud Matar, and Ziad Wahadan.  As with Misalmani, Matar and Wahadan

denied any knowledge of the Gilmore shooting.  *See* Exh. 3 (certified translation of Matar and

Wahadan depositions) at 7:28-8:9; 12:14-19; 14:1-5.  However, at all three depositions,

Plaintiffs' counsel used the depositions as an opportunity to inquire about unrelated terrorist

attacks.  *See, e.g.*, Exh. 2 at 7:2-11:9 (questioning Misalmani about "the killing of the Cahana

family"); Exh. 3 at 4:24-7:23 (questioning Matar about an incident at Neve Yaakov); *id.* at 11:1-

12:13; 13:28-30; 14:16-19 (questioning Wahadan about same Neve Yaakov incident).

The concern that any Damara deposition will be similarly administered is well-founded.

In response to discovery requests for "[a]ll documents referring or relating to Mahmoud

Damara," Plaintiffs have not produced any documents implicating Damara in the Gilmore

shooting other than a nine-year-old statement of an Israeli Defense Force spokesperson claiming

that Damara was "the commander of the terrorist cell that murdered decedent Esh Kodesh

Gilmore."  *See* Dkt. No. 184 at 2 (citing Dkt. No. 147 at Ex. A).  Plaintiffs do not assert that

Damara, though imprisoned by the Israelis, has been charged with or indicted for any

1085673.1

involvement in the Gilmore shooting.  There is no indication that the Israelis, today, continue to believe Damara had any involvement in the Gilmore incident, and Plaintiffs offer nothing else to explain why the request to produce Damara should be imposed on the Israeli justice system. Defendants take no position regarding whether Plaintiffs should be allowed to depose Damara, but given Plaintiffs' counsel's practice of using the previous depositions conducted in this case as a fact-finding vehicle for other potential lawsuits, the Court should insist that Plaintiffs comply with Article 3(f) and "specify . . . the questions to be put to the person[] to be examined or a statement of the subject matter about which they are to be examined."  In the alternative, if Defendants are to incur the burden and expense of participating in the Damara deposition, Plaintiffs should be required to provide assurances to the Court and Defendants that they intend to limit their questioning of Damara to matters directly relevant to this lawsuit.

The fact that Damara is imprisoned in Israel awaiting a criminal trial on terrorism charges provides an additional reason the Letter of Request should specify the areas as to which Plaintiffs intend to question him.  A description of the areas of questioning will enable Damara, in consultation with his defense counsel, to assess the privileges and immunities to which he is entitled, either under the law of Israel or that of the United States, in advance of the deposition. *See* Hague Evidence Convention, art. 11, 23 U.S.T. 2555.  Article 11 of the Hague Evidence Convention provides:

> In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence -- (a) under the law of the State of execution; or (b) under the law of the State of origin, and the privilege or duty has been specified in the Letter, or, at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.

*Id.* Here, the assertion of privileges and immunities is complicated by the fact that Damara is a Palestinian imprisoned by Israelis, so is not a citizen of the State of execution (Israel).

1085673.1

Whether Mr. Damara appears for a deposition is a matter for the Israeli authorities to decide. The extent to which Mr. Damara will testify is a matter for him to decide in consultation with his criminal defense counsel. The PA/PLO only seeks clarification regarding the areas as to which Mr. Damara would be deposed to avoid the burden and expense of participating in a deposition that cannot proceed because of assertions of privilege against self-incrimination. Given Damara's pending criminal trial, issues regarding whether Damara will seek any privilege against self-incrimination should be surfaced before the deposition, which is more likely to happen if Damara is given notice about the areas as to which Plaintiffs seek to depose him.

Defendants conclude by addressing Plaintiffs' apparent position that Damara is a "non-part[y]." *See* Dkt. No. 184 at 1 (asserting that the PA/PLO lack standing to oppose the Letters of Request because they are directed at "non-parties."). This position is inconsistent with Plaintiffs' previous efforts to seek Damara's deposition through a Rule 30(b)(1) deposition served on the PA/PLO. *See* Exh. 4 (Notice of Deposition). It also is inconsistent with Plaintiffs' repeated claims that Damara's is an officer of the PA, whose statements are binding on the PA. *See, e.g.*, Dkt. No. 163 at 5; *id.* at 7; Dkt. No 176 at 3; Dkt. No. 179 at 3. Whether Damara is ultimately adjudged to be an officer of the PA for discovery or evidentiary purposes is a matter for the Court to decide at another time, but the Court should be aware of this apparent change in position and the likelihood that it will change once again when it no longer suits Plaintiffs to characterize Damara as a third party.

1085673.1

## Conclusion

For the forgoing reasons Defendants respectfully ask the Court to reconsider its decision to issue the Request for Judicial Assistance Pursuant to the Hague Convention as to Mustafa Misalmani, or the form of that Request, and to reconsider the form of the Letter of Request as to Mahmoud Damara.

Dated:  August 20, 2010                    Respectfully submitted,

By: /s/ Mark J. Rochon
Mark J. Rochon (D.C. Bar No. 376042)
Laura G. Ferguson (D.C. Bar No. 433648)
Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com

*Attorneys for the Palestinian Authority and*
*Palestine Liberation Organization*

1085673.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 20th day of August 2010, a true and genuine copy of

the foregoing was filed by ECF, which will automatically send notification and a copy of such

filing to the following:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI  02903
> Email:  djs@mtlhlaw.com
> *Attorneys for Plaintiffs*

/s/ Mark J. Rochon

1085673.1