
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REUVEN GILMORE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 1:01cv853 (GK) |
| ) | |
| PALESTINIAN INTERIM SELF- ) | |
| GOVERNMENT AUTHORITY, *et al.*, ) | |
| ) | |
| Defendants. ) | Next Event:   June 27, 2011 |
| ) | Status Conference |

**DEFENDANTS' MOTION FOR THE APPOINTMENT OF COUNSEL FOR MAHMOUD DAMARA AND MUSTAFA MISALMANI**

On June 1, 2011, the Court ordered Defendants the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") to file a motion regarding their request for court-ordered appointment of U.S. counsel for two witnesses — Mahmoud Damara and Mustafa Misalmani — who are scheduled for deposition in Israel under the Hague Convention.  DE 234 at 1-2.  Accordingly, Defendants respectfully submit the following motion, and request that the Court appoint counsel for Damara and Misalmani.[1]

## ARGUMENT

The Supreme Court has observed that "[e]very court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness."  *Betts v.*

---

[1] Defendants note that, consistent with this Court's directive, they are not discussing the other substantive issues related to these depositions as to the question of immunity.  *See* DE 234 at 2 ("The motion and opposition shall indicate what authority, if any, exists for this Court to appoint counsel in this matter, and shall not be used to discuss any other substantive issues").  Defendants have also therefore refrained from addressing the question of the need for U.S. counsel for these witnesses, except in terms of the factors the Court must consider when appointing counsel pursuant to 28 U.S.C. § 1915(e).

*Brady*, 316 U.S. 455, 471-72 (1942), *overruled in part on other grounds by Gideon v. Wainwright*, 372 U.S. 335 (1963).  This authority stems from the inherent power of a court to manage its affairs "to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  Though *Betts v. Brady* was overturned in part in *Gideon*, the holding as to a court's inherent authority was not reversed, as *Gideon* held that cases like *Betts* were too stingy with respect to the appointment of counsel, not too generous.  The Court of Appeals in this Circuit has reaffirmed this Court's supervisory authority to appoint counsel in the interest of fairness, post-*Gideon*:

> We do not feel it necessary to determine the reach of 28 U.S.C. § 1915, for the result in these cases is the same whether or not that provision is applicable. This court has the function and responsibility of exercising supervisory powers to the end of obtaining fair administration of criminal justice within the District of Columbia. The Supreme Court outlined our duties in the exercise of that supervisory power in *Griffin v. United States*, 336 U.S. 704, 69 S. Ct. 814, 93 L. Ed. 993 (1949), and *Fisher v. United States*, 328 U.S. 463, 476, 66 S. Ct. 1318, 90 L. Ed. 1382 (1946). That responsibility has called forth significant rulings of this court relating to right to counsel. Of particular interest in the current context is *Wildeblood v. United States*, 106 U.S.App.D.C. 338, 273 F.2d 73 (1959), where we held that the then Municipal Court of Appeals was required to appoint counsel to assist indigent defendants seeking to appeal convictions involving serious moral turpitude even where there was no appeal as of right because the penalty imposed was less than $50.

*Tate v. United States*, 359 F.2d 245, 252 (D.C. Cir. 1966).

The statutes that govern the appointment of counsel, and the cases interpreting those statutes, reflect the *Betts* principle, providing the federal courts with broad authority to appoint counsel in the interest of fairness.  The Criminal Justice Act, 18 U.S.C. 3006A, contains mandatory provisions for appointment of counsel in certain cases, § 3006A(1), and discretionary appointment in the interest of justice in others, § 3006A(2).  Even where the literal terms of the

statute do not necessarily cover the appointment, federal courts have held that the statute should be read broadly, to accomplish the Congressional goal of affording counsel whenever constitutional rights are at stake. For example, in *Jett v. Castaneda*, 578 F.2d 842 (9th Cir. 1978), the Ninth Circuit addressed a situation in which an individual being questioned by police obtained appointed counsel even though his Sixth Amendment right to counsel had not yet attached. The Court of Appeals upheld the appointment, explaining:

> The right to counsel during custodial interrogation implements the Fifth Amendment right against self-incrimination. It does not proceed directly from the Sixth Amendment. However, this constitutional rationale need not detract from the district court's power under § 3006A. While a literal reading of § 3006A appears to limit its applicability to the Sixth Amendment right to counsel, the intent of Congress was clearly broader. Congress acted after *Mathis*, *Miranda*, and *Escobedo*, and it intended by its action to extend the "coverage of the act to include those instances where judicial decisions may require the appointment of counsel * * *." Its purpose was to obviate "the need to amend the act each time the right to counsel may be extended to new situations." H. Rep. No. 91-1546 (October 5, 1970), in 1970 U.S. Code Cong. and Admin. News, pp. 3982, 3988. In the light of this history, we are satisfied that Congress used "Sixth Amendment" as shorthand for "constitutional right to counsel," whatever the specific derivation of the right. The district court had the power to appoint counsel for Castaneda, and it acted correctly in doing so.

*Jett*, 578 F.2d at 844-845; *see also United States v. North,* No. 88-0080, 1989 U.S. Dist. LEXIS 7185 (D.D.C. June 22, 1989) (relying on Criminal Justice Act to appoint counsel for material witness in criminal case).

The Criminal Justice Act provisions have been applied to permit the appointment of counsel in circumstances similar to those here. Specifically, in *United States v. Ontiveros-Lucero*, 621 F. Supp. 1037 (W.D. Tex. 1985), the question was whether a defendant in a United States criminal proceeding could depose a prisoner in Mexico. The Court ruled that such a deposition could occur only with the consent of the Mexican prisoner, and then found that

appointment of counsel for the prisoner was necessary to ensure adequate protection of his rights:

> Furthermore, appropriate safeguards should be provided against the giving of an uninformed or coerced consent. The Court finds that such safeguards are available through the easy means of appointing an attorney to represent Marquez [the prisoner] in this case. Since he is a Defendant in a pending case, he is entitled to representation by counsel as is every other defendant. The United States Magistrate can appoint the Federal Public Defender to represent Marquez, and the Public Defender assigned to the case can advise and counsel with Marquez before any deposition is taken. If his consent is given, it must be given in writing and signed by his attorney as well as by himself.

*Ontiveros-Lucero*, 621 F. Supp. at 1039.

The same considerations that warranted the appointment of counsel in *Ontiveros-Lucero* apply here. To be sure, there is a potential distinction — the witness in *Ontiveros-Lucero* happened to be the subject of a United States prosecution already, and thus literally came within the terms of the mandatory appointment provisions of the Criminal Justice Act. However, the mere fortuity that the witness happened to also be a defendant is not what seemed to trigger the appointment of counsel, since the witness was a defendant before his deposition was sought and the Court did not appoint counsel until after the deposition was requested, and with a specific eye toward the role of counsel in advising the witness about the potential consequences of the deposition. Likewise, the analysis of *Jett v. Castenada*, which emphasized the importance of the Criminal Justice Act in preserving fundamental Fifth Amendment rights, suggests that the Act can be read broadly to authorize the appointment of counsel here, given the serious questions that exist about whether the deponents could face prosecution in the United States as a direct result of statements made during the depositions.

Indeed the Criminal Justice Act specifically recognizes the need for counsel to be appointed in matters that might be ancillary to a criminal proceeding. Specifically, pursuant to

appointment of counsel for the prisoner was necessary to ensure adequate protection of his rights:

> Furthermore, appropriate safeguards should be provided against the giving of an uninformed or coerced consent. The Court finds that such safeguards are available through the easy means of appointing an attorney to represent Marquez [the prisoner] in this case. Since he is a Defendant in a pending case, he is entitled to representation by counsel as is every other defendant. The United States Magistrate can appoint the Federal Public Defender to represent Marquez, and the Public Defender assigned to the case can advise and counsel with Marquez before any deposition is taken. If his consent is given, it must be given in writing and signed by his attorney as well as by himself.

*Ontiveros-Lucero*, 621 F. Supp. at 1039.

The same considerations that warranted the appointment of counsel in *Ontiveros-Lucero* apply here. To be sure, there is a potential distinction — the witness in *Ontiveros-Lucero* happened to be the subject of a United States prosecution already, and thus literally came within the terms of the mandatory appointment provisions of the Criminal Justice Act. However, the mere fortuity that the witness happened to also be a defendant is not what seemed to trigger the appointment of counsel, since the witness was a defendant before his deposition was sought and the Court did not appoint counsel until after the deposition was requested, and with a specific eye toward the role of counsel in advising the witness about the potential consequences of the deposition. Likewise, the analysis of *Jett v. Castenada*, which emphasized the importance of the Criminal Justice Act in preserving fundamental Fifth Amendment rights, suggests that the Act can be read broadly to authorize the appointment of counsel here, given the serious questions that exist about whether the deponents could face prosecution in the United States as a direct result of statements made during the depositions.

Indeed the Criminal Justice Act specifically recognizes the need for counsel to be appointed in matters that might be ancillary to a criminal proceeding. Specifically, pursuant to

18 U.S.C. § 3006A(c), representation may also be provided for "ancillary matters appropriate to the proceedings." The one example given for representation in such an ancillary matter is where it may be necessary for appointed counsel to attend a civil deposition for the purpose of advising an individual concerning his Fifth Amendment rights:

> The scope of representation in the ancillary matter should extend only to the part of the ancillary matter that relates to the principal criminal charge and to the correlative objective sought to be achieved in providing the representation (e.g., a CJA defendant in a criminal stock fraud case should be represented by CJA counsel at the defendant's deposition in a parallel civil fraud action for the limited purpose of advising him concerning his Fifth Amendment rights.)

*Guidelines for the Administration of the Criminal Justice Act and Related Statutes*, § 2.10.20.30(d). The Guidelines provided by the judicial counsel also make clear that one primary factor in determining whether to appoint counsel on an ancillary matter is whether doing so is necessary "to protect a Constitutional right." *Id.* at § 2.10.20.30(c)(1).

Even if the Criminal Justice Act did not permit appointment of counsel, which it does, the statute allowing for appointment of counsel in civil cases, 28 U.S.C. § 1915(e), contains broad language permitting the appointment of counsel "to represent *any person* unable to afford counsel." In this Circuit, the test for appointing counsel under Section 1915(e) involves an examination of multiple factors, including the complexity of the action and the degree to which the interests of justice will be served by the appointment of counsel. *Wills v. FBI*, 274 F.3d 531, 533 (D.C. Cir. 2001)*; see also* Local Civ. R. 83.11(b)(3); *Alvarez v. Kisto,* No. 08-cv-2226, 2009 U.S. Dist. LEXIS 19594 (D. Ariz. Mar. 3, 2009) (appointing Federal Public Defender in part in reliance on "any person" language from Section 1915(e)).

There can be no dispute about the importance of counsel in providing guidance about the Fifth Amendment consequences for witnesses facing potential criminal exposure as a result of their testimony. As the Supreme Court has explained:

> [t]he assertion of a testimonial privilege, as of many other rights, often depends upon legal advice from someone who is trained and skilled in the subject matter, and who may offer a more objective opinion. A layman may not be aware of the precise scope, the nuances and boundaries of his Fifth Amendment privilege. It is not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion.

*Maness v. Meyers*, 419 U.S. 449, 465-66 (1975).

Nor can there be any serious dispute that the appointment of counsel serves the interests of justice. The individuals subject to deposition would be made to appear solely by virtue of an order requested by this Court. Given that the prisoners are being asked to participate in an American proceeding, it would be fundamentally unfair to do so without at least providing them with safeguards adequate to ensure protection of their fundamental rights, and without providing them with the competent and knowledgeable counsel who could advise them of the precise scope, nuances and boundaries of the Fifth Amendment privilege.

Under the present circumstances, where serious questions exist about the application and scope of any Fifth Amendment privilege, and where the potential deponents have no ready means available for gaining advice on these complicated matters, substantial authority exists that would allow this Court to appoint counsel.

The Court has directed that no Reply be filed in support of the instant motion. Therefore, in anticipation of potential arguments from the Plaintiffs, Defendants wish to present the following for the Court's consideration. First of all, Plaintiffs might argue that the deponents do not qualify financially for the appointment of counsel. In response, Defendants note that in the

cases and instances cited above, the courts' opinions did not turn, and for the most part did not reference, financial eligibility. This Court's inherent authority to appoint counsel is not limited by whether the person in need of counsel has funds. Indeed, undersigned counsel is confident that, if this Court wished to appoint counsel, the Federal Public Defender would be willing to accommodate the Court's request. Moreover, though Defendants have substantial issues with the Israeli Military Tribunal process that yielded the "convictions" of the sought-after deponents, the fact of the "convictions" might cause private U.S. counsel to have concerns about the receipt of funds from the deponents and possible reporting complications associated with such receipt. Finally, as to financial eligibility, which is admittedly a valid concern under the Criminal Justice Act and Section 1915(e), that is an issue to be addressed in the first instance by the Federal Public Defender, not the Court. Eligibility depends on the weighing of a variety of factors, and undersigned counsel does not pretend to know how such determinations are made.

Second, Plaintiffs might raise the issue as to whether the Federal Public Defender can advise the deponents, given that the Federal Public Defender counsel cannot converse readily with them, due either to language barriers or the Israeli prison authorities limiting access for confidential communications. Indeed, Defendants concede that the Israeli prison authorities do not provide for confidential attorney-client communications for alleged security detainees. However, even if such a situation exists, it would not preclude U.S. counsel from conveying their expertise and views to the prisoner-deponents' overseas counsel.

Third, Plaintiffs might attempt to make much of the fact that the instant matter is a civil deposition, not a criminal prosecution. However, Defendants note that this was also the case in some of the matters cited above, and the possibility of representation in a civil proceeding to advise about the Fifth Amendment consequences of testifying is expressly referenced in the CJA

1169119.2

Guidelines prepared by the Administrative Office of the Courts.  Moreover, Defendants note that the instant action, while civil in nature, arises under Title 18, and it turns on the Plaintiffs demonstrating, as an element, that there was an act committed that would have been a crime if committed within the United States.  18 U.S.C. §§ 2331(1)(a), 2333(a)**.**  And in the teleconference before the Court last week, Plaintiffs counsel conceded his view that prosecution of the individual deponents was possible in the United States.  The advice that would be provided by U.S. counsel, therefore, would be to a prisoner being deposed in a Title 18 matter, as to which Plaintiffs' counsel has admitted that the deponent may be subject to U.S. prosecution.  In such a situation, this Court's inherent authority to appoint counsel ought to be exercised.

Fourth, in a recent submission, Plaintiffs have already argued to this Court that if the prisoner deponents want counsel, the PA/PLO "can and should hire them," DE 232 at 2, while at the same time alleging that Defendants "are stage-managing from behind the scenes the positions" of the prisoner deponents and engaging in "*sub rosa* conduct" in respect to the prisoner depositions.  DE 230, Memorandum at 5.  Defendants' request herein, made well before the accusations of "stage-managing," undermines the notion that Defendants are doing anything other than seeking to have these individuals receive adequate, and independent, advice.  Whether or not the Plaintiffs maintain their position that Defendants ought to fund U.S. counsel for the prisoner-deponents, at the least Plaintiffs should abstain from further accusations that Defendants are somehow controlling or influencing the actions or testimony of deponents regarding these Hague depositions.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion.

Dated:  June 6, 2011                    Respectfully submitted,

                                        By: /s/ Mark J. Rochon
                                        Mark J. Rochon (D.C. Bar No. 376042)
                                        Laura G. Ferguson (D.C. Bar No. 433648)
                                        Brian A. Hill (D.C. Bar No. 456086)
                                        Miller & Chevalier Chartered
                                        655 Fifteenth Street, N.W., Suite 900
                                        Washington, DC  20005-5701
                                        Tel. (202) 626-5800
                                        Fax. (202) 626-5801
                                        mrochon@milchev.com

                                        *Attorneys for the Palestinian Authority and*
                                        *Palestine Liberation Organization*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 6th day of June 2011, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to the following:

>Robert J. Tolchin, Esq.
>The Berkman Law Office, LLC
>111 Livingston Street – Suite 1928
>Brooklyn, NY 11201
>(718) 855-3627
>(718) 855-4696
>rjt@tolchinlaw.com
>A*ttorneys for Plaintiffs*

    /s/ Mark J. Rochon

1169119.2