UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

REUVEN GILMORE, et al., :
:
    Plaintiffs, :
: Civil Action No. 1-853 (GK)
v. :
:
PALESTINIAN INTERIM SELF- :
GOVERNMENT AUTHORITY, et al., :
:
    Defendants. :
:

---

## MEMORANDUM OPINION

Plaintiffs are family members and the estate of Eish Kodesh Gilmore, a United States national killed in a shooting on October 30, 2000, in Jerusalem, Israel ("Plaintiffs"). They bring this case against Defendants, the Palestinian Interim Self-Government Authority ("PA") and the Palestine Liberation Organization ("PLO") (collectively, "Defendants") pursuant to the Anti-Terrorism Act of 1991 ("ATA"), 18 U.S.C. § 2331, et seq., and related common law theories.

This matter is before the Court on Plaintiffs' Renewed Motion for Production of PA GIS Documents and for Related Relief [Dkt. No. 352]. Upon consideration of the Motion, Opposition [Dkt. No. 356], and Reply [Dkt. No. 357], the entire record herein, and for the reasons stated below, Plaintiffs' Motion shall be **denied.**

## I. BACKGROUND

Eish Kodesh Gilmore was shot and killed on October 30, 2000, at the beginning of the Second Intifada, while working as a security guard at the Jerusalem branch office of the Israeli National Insurance Institute. Plaintiffs allege that PA employee Muhanad Abu Halawa shot Gilmore, and that three other agents of the PA and PLO, Mustafa Misalmani, Bashar Al-Khatib, and Mahmoud Damara, helped in planning and carrying out the attack.[1]

Plaintiffs filed this case on April 18, 2001. Discovery commenced on March 22, 2010. See Memorandum Order, dated Mar. 22, 2010 [Dkt. No. 181]. On August 9, 2012, Defendants moved for summary judgment, arguing that "[a]t the close of fact discovery – and after deposing Misalmani, Al-Khatib, and Damara, among others – Plaintiffs still have no admissible evidence to take to a jury supporting their lynchpin allegation that Abu Halawa shot Gilmore." Defs.' Mot. for Summ. J. at 2 [Dkt. No. 285]. Plaintiffs did not initially file an Opposition to Defendants' Motion for Summary Judgment but instead moved for

---

[1] Due to the transliteration of these individuals' names from English to Arabic, the names are also sometimes written as Mustafa "Maslamani," Mahmoud "Damra" and "Muhannad Abu Halaweh." Abu Halawa is also known by the name "Muhannad Sa'eed Munib Deireia."

additional time to complete discovery pursuant to Fed. R. Civ. P. 56(d), which the Court granted on September 19, 2012. [Dkt. No. 297].

Six months later, on March 19, 2013, Defendants sought to resume briefing on their Motion for Summary Judgment, noting that the additional discovery Plaintiffs requested under Rule 56(d) had either been completed or was at a standstill [Dkt. No. 298].

While that Motion was pending, on April 19, 2013, Plaintiffs filed a Motion to Compel Production of Late-Disclosed Documents. [Dkt. No. 303]. Plaintiffs sought files created by the PA's General Intelligence Service ("GIS") pertaining to Abu Halawa, Damara, and Misalmani, the existence of which Defendants had recently disclosed to Plaintiffs, and which Defendants were withholding on the basis of the "state-secrets" and law enforcement privileges. After Plaintiffs' Motion to Compel had been fully briefed, the Court directed Defendants to submit the files to the Court for in camera review. With the Court's permission, Defendants also submitted an ex parte explanatory Memorandum to aid the Court's review.

On June 6, 2013, after reviewing the documents in camera, the Court denied Plaintiffs' Motion to Compel. See Memorandum

Order, dated June 6, 2013 [Dkt. No. 314]. The Court first explained that "[n]owhere in the 25 pages submitted by Defendants is there any admissible evidence that would be relevant to Plaintiffs' case." Id. at 2. Elaborating on this point, the Court noted that the documents largely post-dated the National Insurance Institute attack and, to the extent they mentioned the attack, did not constitute admissible evidence. Further, the information in the documents was duplicative of materials already in Plaintiffs' possession. Id.

Next, the Court explained that, "in considering whether to compel disclosure of documents where such disclosure" is prohibited under the laws of the foreign government in possession of them, a court should be guided by the factors set forth in Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct., 482 U.S. 522 (1987). Among these factors is "the extent to which . . . compliance with the request would undermine important interests of the state where the information is located." Mem. Order at 2 (citing Societe Nationale, 482 U.S. at 544 n.28). The Court found that Defendants had made "numerous persuasive arguments for concluding that disclosure of the requested files would 'undermine important interests' of the

PA." For these reasons, the Court denied Plaintiffs' Motion to Compel. Id. at 3.

On June 20, 2013, Plaintiffs moved to unseal the ex parte explanatory memorandum Defendants submitted to aid the Court's in camera review of the GIS documents. See Pls.' Mot. to Unseal and for Related Relief [Dkt. No. 319-1]. In that Motion, Plaintiffs characterized the Court's denial of their Motion to Compel as being "primarily on the grounds that the GIS documents are neither admissible nor relevant to plaintiffs' claims." Id. at 2. Plaintiffs argued that "[t]he grounds for that Order took plaintiffs by surprise, since neither plaintiffs' Motion nor defendants' Opposition thereto briefed questions of relevance and admissibility." Id. Plaintiffs surmised that the Court's assessment of relevant and admissibility was influenced by arguments in Defendants' ex parte memorandum. Based on this assumption, Plaintiff argued that they had an "absolute Due Process right to see and respond to defendants' arguments regarding admissibility, relevance, and any other legal or factual matter, other than whatever specific facts the Court finds too sensitive to be disclosed to the plaintiffs." Id. at 3.

On November 27, 2013, the Court issued an Order denying Plaintiffs' Motion to Unseal. The Court pointed out that its consideration of the relevancy and admissibility of the GIS documents fell squarely within the first factor of the Societe Nationale comity analysis, which is "the importance to the . . . litigation of the documents[.]" Nov. 27 Am. Order at 2 (citing Societe Nationale, 482 U.S. at 544).

The Court also explained that the basis for its assessment of relevancy and admissibility was set forth in its Memorandum Order denying the original Motion to Compel, and that "[t]here was virtually no other information or argument in Defendants' ex parte Memorandum referring to [such issues] other than what the Court described." Id. at 3.

Thereafter, on December 23, 2013, Plaintiffs filed the instant Renewed Motion for Production of PA GIS Documents and Related Relief ("Renewed Motion) [Dkt. No. 352].[2] On January 6,

---

[2] Plaintiffs made only the most perfunctory attempt to satisfy the requirements of Local Rule 7(m) by emailing opposing counsel on a Sunday and, prior to receiving any response, filing this Motion the following morning. Such efforts clearly do not satisfy Rule 7(m)'s requirement that "counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone" and make a "good faith effort" to determine whether there is any opposition to the relief sought. L.R. 7(m) (emphasis added). Nevertheless, because it is clear Defendants would have opposed the Motion, and because Plaintiffs raise

-6-

2014, Defendants filed their Opposition [Dkt. No. 356]. On January 16, 2014, Plaintiffs filed their Reply. [Dkt. No. 357].[3]

## II. DISCUSSION

Plaintiffs advance four arguments in support of their Renewed Motion.

First, they claim that they are entitled to de novo review of the Court's admissibility and relevancy determinations because they were not afforded an opportunity to address these issues in the original Motion to Compel. Second, they argue, on the merits, that the Court erred in concluding the GIS documents are not relevant or admissible. Third, they assert that the Court clearly erred in extending comity considerations to the Palestinian Authority. Fourth, they contend that the Court's weighing of the Societe Nationale factors merit reconsideration in light of a subsequent development in a case currently pending in the Southern District of New York, Sokolow v. Palestinian

---

important arguments regarding due process, the Court shall address Plaintiffs' Motion on its merits.

[3] In the meantime, on October 2, 2013, Plaintiffs filed their Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 336-1]. On October 25, 2013, Defendants filed their Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 341]. That Motion is now fully briefed and pending before the Court.

Liberation Org., No. 04 Civ. 397 (GBD) (RLE) (S.D.N.Y Nov. 4, 2013). The Court addresses these arguments in turn.

A.   **Standard of Review**

   1.   **Plaintiffs Are Not Entitled to De Novo Review**

Plaintiffs contend that they are entitled to de novo review of the Court's conclusions regarding relevancy and admissibility because they were not given an opportunity to brief these issues in connection with their Motion to Compel. Pls.' Mot. at 3 n.2. This is inaccurate.

As previously explained in the Court's Amended Order denying Plaintiffs' Motion to Unseal, the Court considered the relevancy and admissibility of the GIS documents solely in the context of assessing their importance to the case under the Societe Nationale framework. Further, Plaintiffs were on notice that the Court would consider these issues in deciding the Motion to Compel. As discussed below, Defendants' Opposition brief, which was not filed ex parte, and to which Plaintiffs filed a Reply, contested the relevancy and admissibility of the GIS documents twice.

First, in discussing the qualified law enforcement privilege, Defendants' Opposition brief observed that:

> [I]nformation contained in [GIS] files often is collected from sources outside the PA that are of

-8-

> varying degrees of reliability, and the information
> may or may not be true and may or may not be based on
> first-hand knowledge. . . . The raw intelligence
> information in these files, <u>of dubious reliability</u>,
> thus <u>has little probative value to Plaintiffs' case</u>.
> On balance, these factors weigh in favor of non-
> disclosure because of the detrimental effect
> disclosure would have on GIS' work and <u>the marginal
> value of the GIS files to this case</u>.

Defs.' Opp'n to Mot. to Compel at 8-9 (quotation marks omitted) (emphasis added).

Second, in discussing the <u>Societe Nationale</u> factors, Defendants' Opposition brief again emphasized that, "[a]s would be evident from an <u>in camera</u> review, the GIS files are of <u>marginal significance</u> to the litigation . . . [because] [w]ith fact discovery closed, Plaintiffs <u>still lack admissible evidence as to their theory</u> [that Abu Halawa shot Gilmore]. <u>The GIS files do not change that equation</u>." <u>Id.</u> at 9-10.

Despite the fact that Defendants clearly presented these arguments in their Opposition brief, Plaintiffs elected not to respond to them. Because Plaintiffs have already had one opportunity to address the relevancy, admissibility, and importance of the documents, their attempt to now reargue these points must be considered under the narrow standard of review applicable to a motion for reconsideration.

## 2. Standard Governing Motion for Reconsideration

"[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Negley v. F.B.I., 825 F. Supp. 2d 58, 60 (D.D.C. 2011) (citation and quotation marks omitted). Although a court has the discretion to reconsider an interlocutory order "as justice requires" at "any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities[,]" Fed. R. Civ. P. 54(b), the Supreme Court has cautioned that a court should be "loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (citation and quotation marks omitted).

"In particular, a court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." In re Guantanamo Bay Detainee Litig., 706 F. Supp. 2d 120, 122-23 (D.D.C. 2010)

(citation and quotation marks omitted). A motion for reconsideration is not an "opportunity to reargue facts and theories upon which a court has already ruled," nor is it "a vehicle for presenting theories or arguments that could have been advanced earlier." S.E.C. v. Bilzerian, 729 F. Supp. 2d 9, 14 (D.D.C. 2010) (citations omitted).

### B. The Motion Is Timely

Defendants first contend that Plaintiffs' Motion for Reconsideration is untimely. Defs.' Opp'n at 5-6. While it is true Plaintiffs waited more than six months after the Court ruled on their Motion to Compel to file the instant Motion, they filed their Motion to Unseal on June 20, 2013, only two weeks after the Court's ruling. In that Motion, Plaintiffs explained that they sought to unseal Defendants' ex parte memorandum in order to aid them in filing this Motion. See Pls.' Mot. to Unseal at 3 ("Plaintiffs bring this motion because they believe, respectfully, that the Court's rulings denying their Motion to Compel are erroneous, and they intend to move for reconsideration and reversal of those rulings.") [Dkt. No. 319-1]. Plaintiffs filed this Motion less than one month after the Court resolved the Motion to Unseal. Consequently, the Motion is timely.

### C. There Is No Basis to Reconsider the Court's Assessment of the Importance of the GIS Documents

Plaintiffs argue that the GIS documents: (1) are "highly relevant";[4] (2) are admissible under various hearsay exceptions or as a sanction for Defendants' late disclosure of the documents; (3) are likely to lead to admissible evidence even if they are not themselves admissible; and (4) are properly considered by their expert regardless of admissibility. Pls.' Mot. at 3-10.

Each and every one of these arguments could have been advanced in Plaintiffs' Reply to Defendants' Opposition to their Motion to Compel. Plaintiffs do not offer any justification for failing to do so, nor do they point to any development in the record warranting a reconsideration of these issues.[5]

---

[4] Plaintiffs contend the documents are relevant to: (1) whether Abu Halawa was Gilmore's shooter; (2) whether he was "known to be involved in numerous terrorist activities against Israeli targets during the same period"; (3) whether the shooting was within the scope of Abu Halawa's employment with the PA and whether the PA knew that Abu Halawa was involved in terrorist activities; and (4) the PA's "policies of inciting and encouraging terrorism" during the relevant time period. Pls.' Mot. at 4-6.

[5] Plaintiffs argue that their expert, Alon Eviatar, a former intelligence officer with the Israel Defense Forces, is entitled to consider the GIS documents in forming his opinions about the case. Pls. Mot. at 8-9. Given that Plaintiffs have had since

-12-

Plaintiffs also misconstrue the reasoning underlying the Court's determination. The Court has never suggested the GIS documents lack any relevance whatsoever, or would not, absent the special considerations present here, be discoverable under the Federal Rules of Civil Procedure. To the contrary, the Court acknowledged in its June 6 Memorandum Order that the files include information about the National Insurance Institute attack. The Court concluded, however, that the documents had no great significance because they are both hearsay and duplicative of materials already in Plaintiffs' possession. For these reasons, the documents would not assist Plaintiffs in establishing the factual centerpiece of their case, which is their contention that Abu Halawa killed Gilmore within the scope of his employment for the PA. Plaintiffs have not shown any basis for the Court to reconsider this assessment.

---

September 19, 2012, at the latest, to obtain the opinion of an expert, there does not appear to be any reason Plaintiffs could not have made this argument in their Motion to Compel. Further, Eviatar's Declaration states that, even without the GIS documents, he has formed the "conclusion with a high degree of certainty," that Abu Halawa, a "known terrorist," murdered Gilmore. Declaration of Alon Eviatar ¶ 9 [Dkt. No. 352-2]. Consequently, even if the Court were to consider Eviatar's Declaration, it does not establish that the GIS documents are of any outstanding importance to Plaintiffs' case.

D.   **The Court Did Not "Clearly Err" by Considering the Palestinian Authority's Interests as a Foreign Government**

Next, Plaintiffs argue that the Court clearly erred in concluding that comity considerations apply to the Palestinian Authority because "the principle of comity only applies to foreign states and the PA is not a foreign state." Pls.' Mem. at 10. Plaintiffs quote a sentence from <u>Societe Nationale</u> in which the Supreme Court observed that "[w]e have long recognized the demand of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation." <u>Societe Nationale Industrielle Aeropastiale</u>, 482 U.S. 522 at 546. Plaintiffs highlight the Supreme Court's use of the word "state" to argue that the Palestinian Authority is not entitled to comity considerations because the United States does not recognize it as a "state."

The quoted portion from <u>Societe Nationale</u> emphasizes the importance of protecting foreign litigants from unduly burdensome discovery. The Court made it very clear that its use of the word "state" in the quoted sentence did not delimit or define precisely which foreign litigants qualify for such protection. To the contrary, in the very next sentence, the Supreme Court stated:

> American courts should therefore take care to demonstrate due respect for <u>any</u> special problem confronted by the <u>foreign litigant</u> on account of its <u>nationality</u> or the <u>location of its operations</u>, and for any sovereign interest expressed by a foreign state. <u>We do not articulate specific rules to guide this delicate task of adjudication</u>.

<u>Id.</u> (emphases added). Consequently, <u>Societe Nationale</u> provides no support for Plaintiffs' contention that it was error to consider the Palestinian Authority's special interests as a foreign government.

Plaintiffs also cite two district court cases for the proposition that the principle of deference to foreign law does not apply to local, rather than national, laws. See Pls.' Mot. at 10-11 (citing <u>Young Women's Christian Ass'n of Nat. Capital Area, Inc. v. Allstate Ins. Co. of Canada</u>, 94 Civ. 741 JHG PJA, 1994 WL 661523 (D.D.C. Nov. 22, 1994) and <u>Lyons v. Bell Asbestos Mines, Ltd.</u>, 119 F.R.D. 384, 389 (D.S.C. 1988)). These cases are inapposite because the Palestinian Authority is not a "local" government of the type at issue in the cited cases.[6] In

---

[6] In <u>Young Women's Christian Association</u>, a Magistrate Judge in this Court issued a Report & Recommendation concluding that the blocking statutes of Quebec and Ontario were "not entitled to any deferential consideration under the comity principles of international law," because, <u>inter alia</u>, they were "local laws and not national laws." <u>Young Women's Christian Ass'n of Nat. Capital Area</u>, 1994 WL 661523, at *2. <u>Lyons</u> does not involve, as this case does, a consideration of permissive deference, but rather considered whether a district court was <u>required</u> to abide

-15-

addition, these cases merely concluded that foreign local laws were not entitled to deference; they did not hold that a court is not permitted to consider such laws in resolving a discovery dispute. Cf. Fed. R. Civ. P. 26(b)(2)(C). Further, neither case is binding on this Court, and neither demonstrates an intervening change in the law.

In sum, Plaintiffs have not established any grounds for reconsidering the Court's assessment that the PA's interests as a foreign government warrant deference.

### E. Developments in the Sokolow Case Do Not Warrant Reconsideration

Finally, Plaintiffs argue that even if the Court properly applied the Societe Nationale factors to the PA, those factors should be reconsidered in light of the fact that Defendants were recently ordered to produce GIS documents in Sokolow. Plaintiffs argue that, as a result, Defendants can no longer "reasonably claim that their proprietary investigative techniques will be revealed by production of GIS documents in this case." Pls.' Mot. at 12.

---

by a foreign law restricting discovery. Lyons, 119 F.R.D. at 389. A determination that a district court is not required to defer to a foreign law is a far cry from holding that it may not consider such law in exercising its broad powers to supervise discovery pursuant to Fed. R. Civ. P. 26(b) and (c).

As Defendants point out, although Magistrate Judge Ellis' Order in Sokolow post-dates this Court's June 6 Memorandum Order denying Plaintiffs' Motion to Compel, the fact that Defendants have produced GIS documents in other cases is not a new development. Defs.' Opp'n at 6. In their original Motion to Compel in this case, Plaintiffs argued that "in other cases in the U.S. and in Israel, the Defendants have provided GIS files notwithstanding any claim of state secrets or other privileges." Pls.' Mot to Compel at 13; see also Reply in Support of Mot. to Compel at 10 ("If GIS documents were really secret, defendants would not have produced hundreds of them, without any compulsion, in prior cases."). The Court addressed this topic at a hearing on Plaintiffs' Motion to Compel, and defense counsel explained that the decision whether to produce intelligence files are made by the PA on a case-by-case basis based on their content. Tr. 5/20/13 at 17:21-18:17.

Plaintiffs now argue that the scope of the Sokolow production (approximately 330 pages) renders it "an extremely new development" because defendants only made "small productions of GIS documents in other cases." Pls.' Reply at 7. This assertion is directly contradicted by Plaintiffs' Reply brief in support of their Motion to Compel, in which they argued that

-17-

Defendants had already "produced <u>hundreds</u> of [GIS documents]" in prior cases. Reply in Support of Mot. to Compel at 10 (emphasis added).

The GIS documents disclosed in the <u>Sokolow</u> case relate to different individuals and different subject matter than the documents at issue in this case. Consequently, there is no basis to conclude that their disclosure moots the Court's concerns regarding exposing specific individuals to threats and increasing the risk of disrupting diplomatic relations with foreign governments. <u>See</u> Nov. 27, 2013 Mem. Order at 2 [Dkt. No. 350]. Therefore, the <u>Sokolow</u> decision does not justify reconsideration of the Court's determination that disclosure of the GIS documents will undermine important interests of the PA.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Production of PA GIS Documents will be **denied**.

March 24, 2014

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF