UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REUVEN GILMORE, et al.

    Plaintiffs,

v.

PALESTINIAN INTERIM SELF-
GOVERNMENT AUTHORITY, et al.,

    Defendants.

Civil Action No. 1-853 (GK)

## MEMORANDUM OPINION

Plaintiffs are family members and the estate of Esh Kodesh Gilmore, a United States national killed in a shooting on October 30, 2000, in East Jerusalem. They bring this case against Defendants, the Palestinian Interim Self-Government Authority ("PA") and the Palestine Liberation Organization ("PLO") (collectively, "Defendants") pursuant to the Anti-Terrorism Act of 1991 ("ATA"), 18 U.S.C. § 2331, et seq., and related common law theories.

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings for Lack of Personal Jurisdiction [Dkt. No. 359]. Upon consideration of the Motion, Opposition [Dkt No. 371], and Reply [Dkt. No. 374], and the entire record herein, and for the reasons stated below, Defendants' Motion shall be **denied**.

I.  **BACKGROUND**

Esh Kodesh Gilmore was shot and killed on October 30, 2000, at a branch office of the Israeli National Insurance Institute in East Jerusalem. On April 18, 2001, Plaintiffs filed this action against Defendants, as well as eleven of their current and former employees (the "Individual Defendants"), seeking compensation for Gilmore's death under the ATA and related theories.

Defendants and the Individual Defendants initially failed to file a responsive pleading, leading the Court to enter a default on December 20, 2001 [Dkt. No. 18]. On January 29, 2002, Defendants and the Individual Defendants appeared through counsel and moved to vacate the entry of default, which the Court granted on April 17, 2002 [Dkt. No. 37]. At the same time, Defendants moved to dismiss the case for failure to state a claim and lack of subject matter jurisdiction, and the Individual Defendants moved to dismiss for lack of personal jurisdiction [Dkt. No. 20]. On March 7, 2006, the Court denied Defendants' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, but granted the Individual Defendants' Motion to Dismiss for lack of personal jurisdiction. See generally Gilmore v. Palestinian Interim

Self-Government Auth., 422 F. Supp. 2d 96 (D.D.C. 2006) ("Gilmore I").

After the Court denied their Motion to Dismiss, remaining Defendants PA and PLO failed to file an Answer to the Complaint, prompting the Court to enter a second default. See Order of Jan. 29, 2007 [Dkt. No. 92]. Defendants then retained new counsel and on November 15, 2007, moved to vacate their second default ("Second Mot. to Vacate") [Dkt. No. 107]. On December 28, 2009, after lengthy briefing on that Motion, the Court vacated Defendants' second default, concluding that there was "a strong public interest" in resolving the parties' claims and defenses on their merits. Gilmore v. Palestinian Interim Self-Gov't Auth., 675 F. Supp. 2d 104, 113 (D.D.C. 2009) ("Gilmore II").

The case then entered a two-and-half year discovery phase, which concluded for all practical purposes in 2012, although the parties continued to litigate various discovery disputes throughout 2013. On August 9, 2012, Defendants filed a Motion for Summary Judgment. See generally Defs.' Mot. for Summ. J. [Dkt. No. 285]. On February 10, 2014, after the Motion for Summary Judgment had been fully briefed but before it had been decided, Defendants filed the instant Motion for Judgment on the

Pleadings for Lack of Personal Jurisdiction [Dkt. No. 359]. On April 2, 2014, Plaintiffs filed their Opposition [Dkt. No. 371]. On April 14, 2014, Defendants filed their Reply [Dkt. No. 374].

## II. Defendants Have Waived their Defense of Personal Jurisdiction

Defendants rely on Daimler AG v. Bauman, 134 S. Ct. 746 (2014), in which the Supreme Court held that "a court may assert [general] jurisdiction over a foreign corporation . . . only when the corporation's affiliations with the [forum] are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" Daimler, 134 S. Ct. at 751 (citing and relying upon Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)). Defendants contend that they are not subject to general jurisdiction under the "at home" standard discussed in Daimler and also are not subject to specific jurisdiction. Mot. at 1.

Plaintiffs argue that Defendants have waived their jurisdictional defense by litigating this case on its merits for more than a decade. They further contend that the standard discussed in Daimler does not apply to Defendants because they are governmental entities and that, even if the Court lacks general jurisdiction over Defendants, it has specific jurisdiction. As set forth below, the Court agrees that

-4-

Defendants have waived their jurisdictional defense and therefore need not reach the parties' other arguments.

### A. Personal Jurisdiction Is a Waivable Defense

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." <u>Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 703 (1982).

Rule 12(g) and (h) of the Federal Rules of Civil Procedure describe two nonexhaustive ways in which the defense is waived. As relevant here, Rule 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h) states that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)[.]" Fed. R. Civ. P. 12(h)(1)(A). The collective import of these two provisions is that "[i]f a party files a Rule 12(b) motion to dismiss, it may not subsequently assert any Rule 12(b) defenses that were available when the first Rule 12(b) motion was filed." <u>Candido v. Dist. of Columbia</u>, 242 F.R.D. 151, 161 (D.D.C. 2007) (citing Fed. R. Civ. P.

12(g),(h)(1); Chatman-Bey v. Thornburgh, 864 F.2d 804, 813 (D.C. Cir. 1988)).

A defense is unavailable for purposes of Rule 12(g)(2) "if its legal basis did not exist at the time of the answer or pre-answer motion," so that it was "for all practical purposes impossible for the defendants to interpose their . . . defense[.]" Chatman-Bey, 864 F.2d at 813 n.9. Although an unavailable defense is not, under Rule 12(h), waived by omission from an earlier Rule 12 motion, the defense must be raised "as soon as [its] cognizability is made apparent." Holzsager v. Valley Hosp., 646 F.2d 792, 796 (2d Cir. 1981). Otherwise, the newly available defense is subject to waiver "by failure to assert it seasonably, by formal submission in a cause, or by submission [to the court's jurisdiction] through conduct." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939).

### B. The Defense of Personal Jurisdiction Was Available to Defendants

More than a decade ago, Defendants moved to dismiss the case for lack of subject matter jurisdiction and failure to state a claim under Rule 12(b)(1) and (6). They did not, however, raise their personal jurisdiction defense at that time. See Gilmore I, 422 F. Supp. 2d at 102 n.4 (noting that

"Defendants [PA and PLO] did not move to dismiss . . . this action for lack of personal jurisdiction."). As a consequence, the jurisdictional defense has been waived if either: (1) it was "available" in 2002 when the Motion to Dismiss was filed, see Rule 12(h)(1)(A), or (2) it later became "available" but Defendants failed to promptly assert it. Holzsager, 646 F.2d at 796.

### 1. The Defense Was "Available" in 2002 and Therefore Waived Under Rule 12(h)(1)(A)

Defendants contend that their personal jurisdiction defense was not available in 2002 because the Supreme Court had not then held that a foreign defendant is only subject to general jurisdiction if its affiliations with the forum are so continuous and systematic as to render it "essentially at home" in the forum State. Defendants claim that until the Supreme Court announced the "at home" rule, their jurisdictional defense was simply not "available." As discussed below, this argument is belied by Defendants' own litigation history in this case.

Between 2002 and 2011, Defendants contested the Court's personal jurisdiction on multiple occasions despite the fact that they never moved for dismissal on that basis. For example, on February 15, 2002, less than one month after filing their original Motion to Dismiss, Defendants argued in a separate

filing that "Personal Jurisdiction is Lacking Over . . . the Palestinian Authority" because "[t]he PA is not present in the U.S." Defs.' Opp'n to Pls.' Mot. for Default J. at 6-7 [Dkt. No. 23]. On November 15, 2007, in a proposed Answer attached as an exhibit to their Second Motion to Vacate, Defendants again asserted that the Court lacked personal jurisdiction. See Second Mot. to Vacate, Ex. G at 2 [Dkt. No. 107-7] ("This Court lacks personal jurisdiction over the Defendants with respect to this action."). On April 25, 2011, Defendants formally re-filed their Answer [Dkt. No. 218], raising the defense of personal jurisdiction for a third time.

Furthermore, on May 31, 2011, after Plaintiffs moved to strike Defendants' jurisdictional defense, Defendants filed an Opposition brief arguing that:

> <u>Defendants have raised the issues of personal jurisdiction and venue in every other case in which undersigned counsel have appeared</u> on behalf of Defendants, as had predecessor counsel. <u>Defendants believe that the courts of the United States do not have personal jurisdiction over them</u> and that venue is also therefore improper, and Defendants do not intend to waive these defenses in the United States.

Defs.' Opp'n to Pls.' Mot. to Strike Affirmative Defenses at 10 [Dkt. No. 233].

During the same time period, Defendants – represented by the same counsel – also challenged personal jurisdiction in

-8-

several related cases. See, e.g., Knox v. Palestine Liberation Org., 229 F.R.D. 65, 68 (S.D.N.Y. 2005) ("defendants . . . oppose the assertion of personal jurisdiction over them"); Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 175 (D.D.C. 2004) ("The defendants assert a lack of personal jurisdiction over . . . the PA"); Estates of Ungar ex rel. Strachman v. Palestinian Auth., 153 F. Supp. 2d 76, 82 (D.R.I. 2001) ("This matter is before the Court on the PA defendants' motion to dismiss the complaint for . . . lack of personal jurisdiction[.]").

Defendants' argument that their personal jurisdiction defense was "unavailable" prior to the Supreme Court's announcement of the "at home" rule therefore rings hollow in light of the fact that they have been arguing since 2002 - in this case and others - that such a defense is both "available" and meritorious. Under Rule 12(h)(1)(A), Defendants thus waived the defense by failing to include it in their original Motion to Dismiss.[1]

---

[1] Defendants did not, as they argue, preserve the defense by raising it in their Answer more than five years after they filed their Motion to Dismiss. As the text of Rule 12(h) makes clear, "defendants wishing to raise [a defense of lack of personal jurisdiction] must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading." Mitrano v. Jerry's Ford Sales, Inc., 82 F.3d 403, 1 (1st Cir. 1996) (second

## 2. Defendants Failed to Promptly Assert the Defense After the Supreme Court Announced the "at Home" Rule

As already noted, Defendants base most of their argument on their allegation that "[u]ntil Daimler was decided in January 2014," the specific argument asserted in their Motion, i.e., that their contacts with the District of Columbia do not render them "at home" in this forum, was "simply not available." Reply at 8. They characterize Daimler as a "game-changing decision," which was so "widely viewed as changing the legal landscape for personal jurisdiction" that they could not have raised their defense until after it was decided. Reply at 1, 8.

Even if Defendants were correct that a legal basis to challenge the Court's jurisdiction did not exist until the announcement of the "at home" rule (which, as discussed above, is entirely inconsistent with their behavior in this and other cases), they are flat-out wrong that Daimler was the genesis of

---

emphasis added) (citation omitted); Lawton v. Peroulis, No. 6 Civ. 1125-REBMEH, 2007 WL 1879973 (D. Colo. June 27, 2007) ("By the time Defendant . . . asserted the defenses . . . in the Answer . . . he had already waived [them] by not including them in [his prior Rule 12 motion]"). Nor is this conclusion altered by the Court's July 14, 2011, summary Order denying Plaintiffs' Motion to Strike all fourteen of Defendants' affirmative defenses. That Order was composed of a single sentence and made no findings whatsoever as to whether Defendants had or had not waived any defense. See Order of July 14, 2011 [Dkt. No. 251].

that rule. The "at home" standard was unmistakably announced in Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846 (2011), more than two and a half years before Defendants filed the instant Motion. Therefore, as discussed below, even if Defendants had not waived the defense under Rule 12(h)(1)(A), they have waived it by failing to promptly assert it after Goodyear.

### a. The "at Home" Rule Was Announced in Goodyear, not Daimler

In Goodyear, which was decided on June 27, 2011, the Supreme Court made crystal clear that a foreign defendant's "'continuous activity of some sorts within a state, . . . is not enough to support" general jurisdiction unless that activity is "so 'continuous and systematic' as to render [it] <u>essentially at home</u> in the forum State." 131 S. Ct. at 2851, 2856 (emphasis added). The Court explained that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation <u>is fairly regarded as at home</u>." Id. at 2853-54 (emphasis added). The Court concluded that general jurisdiction was lacking in that case because the petitioners were "in no sense <u>at home</u> in [the forum]." Id. at 2857 (emphasis added).

In Daimler, the Supreme Court emphasized repeatedly that it was applying a rule it had previously announced in Goodyear. For example, in its opening paragraphs, the Court stated:

> In Goodyear . . . we held that a court may assert [general] jurisdiction over a foreign corporation . . . only when the corporation's affiliations with the [forum] are so constant and pervasive 'as to render [it] essentially at home in the forum State.'

Daimler, 134 S. Ct. at 751 (citing Goodyear, 131 S. Ct. at 2851) (emphasis added). In later portions of its opinion, the Court again discussed Goodyear, observing that "Goodyear made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction," and that "the inquiry under Goodyear is . . . whether th[e] [defendant's] 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Id. at 760, 761 (citing Goodyear, 131 S. Ct. at 2851, 2853-54. Thus, the Daimler opinion relied heavily on Goodyear and in no way suggested that the "at home" standard was a new rule.[2]

---

[2] To support their contention that Daimler announced a "new rule," Reply at 1, Defendants cite a portion of Justice Sotomayor's concurrence in which she expressed concern that the Court had adopted "a new rule of constitutional law that is unmoored from decades of precedent" and that "no court ha[d] considered in the history of this case." Daimler, 134 S. Ct. at 773 (Sotomayor, J., concurring). However, Justice Sotomayor was

Nor did the lower courts fail to appreciate the import of Goodyear until Daimler was decided, as Defendants suggest. A Westlaw search indicates that, from June 27, 2011, when Goodyear was decided, until January 13, 2014, the day before Daimler was decided, more than 250 federal court cases discussed Goodyear's "at home" standard, including eighteen circuit court cases and three cases in this District. See, e.g., United States ex rel Barko v. Halliburton Co., 952 F. Supp. 2d 108, 116 (D.D.C. 2013); Khatib v. Alliance Bankshares Corp., 846 F. Supp. 2d 18, 26 (D.D.C. 2012); Mazza v. Verizon Washington DC, Inc., 852 F. Supp. 2d 28, 42 n.13 (D.D.C. 2012).

In fact, Defendants themselves, represented by the same counsel as in this case, twice invoked Goodyear's "at home" standard before Daimler was decided. See Brief for PA at 19, Livnat v. Palestinian Auth., Civ. No. 13-498 (E.D. Va. June 5, 2013) ("In Goodyear, the [Supreme] Court . . . explained that general jurisdiction permits a court to [exercise general jurisdiction] 'when their affiliations with the State are so

---

not referring to the "at home" standard but to the majority's conclusion about how to interpret that standard - namely that a foreign defendant's contacts with the forum must be "viewed in comparison to the company's nationwide and worldwide activities." Id. at 770 (emphasis added). Justice Sotomayor did not suggest in any way that the "at home" standard was itself new.

-13-

continuous and systematic as to render them essentially at home in the forum state.'"); Brief for PA and PLO in Opp'n to Pet. for Writ of Certiorari, Mohamad v. Rajoub, 2011 WL 3664462, at *17 (Aug. 19, 2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." (citing Goodyear, 131 S. Ct. at 2853-54)).

In sum, even if Defendants' jurisdictional defense was not "available" in 2002 when Defendants filed their original Motion to Dismiss, it became available no later than June 27, 2011, when Goodyear announced the "at home" standard. They did not file the present Motion until February 10, 2014 – two and a half years after Goodyear.

    **b. Defendants Failed to Promptly Assert their Defense After <u>Goodyear</u>**

As discussed, unavailable defenses must be raised "as soon as their cognizability is made apparent." Holzsager, 646 F.2d at 796. Defendants did not invoke the "at home" rule as soon as Goodyear made that argument cognizable. Instead, they litigated this case on its merits for more than two and a half years and asked the Court to grant summary judgment in their favor before ever seeking dismissal on jurisdictional grounds.

-14-

"When a defendant participates in the litigation, delays in making an objection to personal jurisdiction, and then makes an objection that could have been easily [addressed] . . . in the first place, the defendant has waived the personal jurisdiction objection." United States v. Brow, No. 01-CV-4797, 2011 WL 7562706, at *5 (E.D.N.Y. Dec. 28, 2011) (citing Datskow v. Teledyne, Inc., Continental Prods. Div., 899 F.2d 1298, 1302-03 (2d Cir. 1990)); see also Democratic Republic of Congo v. FG Hemisphere Assoc., LLC, 508 F.3d 1062, 1064 (D.C. Cir. 2007) (finding waiver where a defendant "engaged in extensive post-default litigation" and failed to seek dismissal "before the court's and parties' time [was] consumed in struggle over the substance of the suit").

In sum, Defendants forfeited their jurisdictional defense both by omitting it from their 2002 Motion to Dismiss and by failing to promptly assert it after Goodyear was decided.[3] Consequently, the Court shall exercise jurisdiction over them.

---

[3] Having so concluded, the Court need not reach whether the standard in Goodyear applies to Defendants or whether Plaintiffs have satisfied that standard.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings shall be **denied**. An Order shall accompany this Memorandum Opinion.

June 23, 2014

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF